# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HAMILTON MELVILLE,**

        **Plaintiff,**

**-vs-**                                                                                                                               **Case No. 6:07-cv-720-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for social security disability insurance benefits and supplemental security income. For the reasons set forth herein, the decision of the Commissioner is **REVERSED and the matter is REMANDED** for further proceedings, consistent with this opinion.

### *PROCEDURAL HISTORY*

Plaintiff filed an application for a period of disability, disability insurance, and Supplemental Security Income benefits in November 2004 (R. 84-86, 497-99). The applications were denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 34-44, 49-51, 54-55, 56, 507-09 and 510-535). The ALJ issued an unfavorable decision on August 3, 2006 (R. 19-31), and Plaintiff requested review from the Appeals Council (R. 18). On October 13, 2006, the Appeals Council denied the request (R. 14-16), thus making the ALJ's decision the final decision of the Commissioner. The instant

Complaint timely followed (Doc. No. 1), and the parties have briefed the issues and waived oral argument. The matter is now ripe for review.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff alleges that he became disabled in August 2004, due to "neck, back, IBS[1] and mental health" issues, specifically depression (R. 110). In addition to the pain and residuals from these conditions, Plaintiff asserts that he has dyslexia and headaches and that he has difficulty reading, writing and concentrating. *Id.*

### *Summary of the Evidence*

At the time of the ALJ's decision, Plaintiff was forty-six years old, with a college education (R. 514) and a varied past relevant work history as a clerk, cable installer, food server, bartender, stock clerk, and training equipment operator (R. 121-46).

The medical evidence is set forth in the ALJ's decision. By way of summary, Plaintiff claims that he became disabled after an automobile accident on August 14, 2004 (R. 351). Plaintiff presented to a chiropractor following the accident (R. 351-55) and a pain and rehabilitation physician (Dr. Umpierre) (R. 408-10). During the initial examination, Dr. Umpierre noted tenderness throughout the left cervical paraspinals, left intrascapular musculature, L4-S1 paravertebral facet musculature and in the midline from L4 to S1, as well as positive straight leg raising with increased discomfort on the left side of the back. Dr. Umpierre diagnosed cervical sprain/strain and lumbar sprain/strain. (R. 410).

---

[1] Irritable Bowel Syndrome.

On October 12, 2004, Plaintiff underwent MRI examination of the lumbar and cervical spine (R. 400-402). The MRI of the lumbar spine revealed retrolisthesis at L4-5 and grade I spondylolisthesis at L5-S1, disk bulging at T12-L1, L4-5 and L5-S1, most severe at L5-S1 with a radial tear at L4-L5 and neural encroachment at L5-S1. The cervical MRI revealed post-surgical changes[2] following an anterior cervical fusion from C5-C7, disk disease at C3-4, C4-5, C5-6, C7-T1, most severe at C4-5 and neural encroachment from C3-4 through C7-T1. Dr. Umpierre assessed Plaintiff with L4-5 disk annular tear, bulge, and lumbar radiculitis; S/P lumbar and cervical sprain/strain; S/P cervical fusion; old C6-T1 radiculopathy; and right leg neuropathy (R. 389).

On return visits to his chiropractor and pain specialist, Plaintiff continued to complain of significant pain and was treated with injections, various pain medications, massage therapy, adjustments, and other non-surgical modalities, all with little reported success. He also complained of depression, and was treated with anti-depressants (R. 389-390, 393). On April 5, 2005, Plaintiff presented to Dr. Umpierre indicating that he had back pain rated as a 10 out of 10 (R. 387). Examination revealed "a lot of restriction [of] motion with antalgic gait." At that time, Plaintiff was assessed by his treating physician as "unable to work." *Id.*

On January 1, 2005, Plaintiff was hospitalized for evaluation of an apparent suicide attempt, after making cuts on his arm (R. 249-264).[3] Plaintiff was diagnosed with Major Depressive Disorder, with a Global Assessment of Functioning of fifty, indicative of moderate symptoms (R. 257). He was referred to Lakeside Alternatives for further treatment, and presented there with a history of manic

---

[2] In August 2000, well before the date of onset, Plaintiff underwent surgery to address cervical disk disease (R. 224-28).

[3] There is some indication that this incident was not a suicide attempt but, in fact, an accident (R. 260).

episodes, depression, suicide attempts and alcohol addiction (R. 462-63). Assessment was Bipolar I Disorder Most Recent Episode Depressed; alcohol dependence; substance abuse, history of mental illness; with a Global Assessment of Functioning of 50. *Id.* Treatment included a variety of medications.

Plaintiff underwent a consultative examination at the request of the administration at Access Behavioral Care Associates (R. 265-267). On mental status evaluation, Plaintiff's mood was depressed with broad affect, speech was logical and coherent, judgment, impulse control, and insight were rated as poor, and mild to moderate problems in short term memory functioning were noted. Diagnosis was Major Depressive Disorder, recurrent, moderate, without psychotic features. Additionally, Dr. Austin opined that Plaintiff had poor social functioning, and his functional ability was impaired based on his significant depression and frequent fatigue.

Plaintiff also underwent a physical examination by a consultative physician (R. 268-70). On examination, muscle strength and grip strength were normal and straight leg raising was negative. There was reduced range of motion of the thoracolumbar spine, full in all other joints. It was felt Plaintiff would have difficulty in strenuous activities, particularly climbing stairs or ladders and repetitive stooping and squatting.

The record includes evidence with respect to Plaintiff's vision difficulties. In a report from his optometrist dated October 5, 2005, Plaintiff was noted to have a "lack of ability to converge at the near point," and "demonstrated very poor binocular reserves at the near point." (R. 469). Thus, his optometrist opined that Plaintiff would have difficulties in his ability to perform any type of "close work" or tasks involving reading.

Plaintiff was evaluated by orthopaedic surgeon Richard Smith on January 31, 2006 (R. 472-475). On examination, motor and sensory examination were normal, he was tender to palpitation, there was reduced range of motion, but no weakness. Another MRI was performed on March 27, 2006, revealing Grade I spondylolisthesis at L5-S1 with anterolisthesis of L5 over S1 and moderate degenerative disk disease at L5-S1 with associated reactive end plate marrow changes (R. 480). The MRI of the cervical region also showed moderate degenerative disk disease at C4-5 with mild central canal stenosis and mild foraminal narrowing bilaterally (R. 478). His surgeon recommended conservative treatment continue (R. 491-2).

On July 19, 2006, Dr. Klonel, the chiropractor, completed a physical capacities evaluation indicating that Mr. Melville could lift up to fifteen pounds occasionally, walk and sit a total of two to four hours each, but could only perform these for thirty minutes without interruption (R. 494-95). Furthermore, Dr. Klonel opined that Mr. Melville could never climb, balance, stoop, crouch, kneel or crawl.

At the hearing, Plaintiff appeared and testified, as did a Vocational Expert. Additionally, the record contains the opinions of non-examining state agency physicians, self-reports provided by Plaintiff, and the opinions and observations of people who knew Plaintiff, including a county case worker/social worker (R. 158-162).

The ALJ determined that Plaintiff had severe impairments of "degenerative disc disease of the cervical spine and lumbar spine, with radiculopathy, discogenic pain, and affective disorder impairments," however, the ALJ concluded that these impairments, alone and/or in combination, did not meet or equal an impairment listed in the regulations (R. 27). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of light work with postural

limitations and the need to avoid extreme cold and heat. In addition, Plaintiff was limited to performing only simple routine tasks on a sustained basis (R. 28). Based upon Vocational Expert ("VE") testimony, the ALJ determined Plaintiff could perform work as an assembly worker and cashier (R. 30), and therefore he found Plaintiff to be not disabled (R. 30-31).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff asserts that the ALJ erred in his evaluation of Plaintiff's impairments; his allegations of pain; his reliance on the VE testimony, which was based on an allegedly incomplete hypothetical; and his evaluation of Plaintiff's credibility. While the Court does not agree with every contention, error is apparent.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

Here, Plaintiff contends that the ALJ erred at step two, in that "he did not even address whether the claimant's Major Depressive Disorder/Bipolar Disorder or his eye condition were severe impairments." (Doc. No. 15 at 10). The Court disagrees with the contention that the ALJ did not address his allegations of depression, as the decision directly discusses his mental health issues (R.

24, 25, 27 and 28) and finds Plaintiff's "affective disorder" to be severe at step two.[4] The Court agrees with Plaintiff, however, that the ALJ erred in neglecting to include Plaintiff's documented vision impairment as a severe impairment.[5]

The Court notes that the ALJ included the medical evidence relative to Plaintiff's vision impairments in the body of the decision, but did not list the impairment at the step two finding. To the extent the ALJ implicitly considered and rejected the impairment, such is not supported by substantial evidence. The ALJ found:

> The claimant also does have a learning disorder and the opthamological examination shows he should avoid tasks involving reading and studying. However, the claimant would be capable of performing simple and repetitive task [sic] on a sustained basis.

(R. 28)

The ALJ does not explain, and the Court does not comprehend, the perceived relationship between a mental ability to perform simple and repetitive tasks and the physical ability to see sufficiently for reading or writing or to perform close work. Having established that Plaintiff has a learning disorder and vision impairment, the ALJ was obligated to consider whether that impairment is "severe" within the meaning of step two. That Plaintiff may or may not have the mental ability to perform simple tasks is irrelevant to that determination.

As Plaintiff notes, a severe impairment, by definition, is one that "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The regulations provide:

---

[4] An affective disorder is a mental disorder characterized by dramatic changes or extremes of mood, which may include manic or depressive, or combinations of the two. *See* http://www.britannica.com/eb/article-9003908/affective-disorder.

[5] Curiously, the Commissioner does not address this omission in his brief.

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b); see also § 404.1521(b).

Here, the uncontradicted medical evidence establishes that Plaintiff has an impairment which effects his capacity for seeing, a basic work activity. Indeed, the medical evidence regarding this impairment establishes without contradiction that Plaintiff suffers from binocular dysfunction, and that as a result of this, he has difficulty performing any type of "close work." Plaintiff testified that this impairment, a type of dyslexia, prevents him from reading (R. 526-27) and claimed in his disability report that his dyslexia caused problems reading, writing and concentrating (R. 110). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986). An impairment that limits close work, reading and writing is "not so slight and its effect not so minimal" as to be characterized a "trivial impairment." *Id.* Indeed, this is especially evident here, when the VE was presented with a hypothetical that did not include any vision limitations, and thus opined that Plaintiff was able to perform the job of assembler; a task that, according to the Dictionary of Occupational Titles, requires "near acuity" vision ability "frequently" in order to "visually inspect products for defects." D.O.T. 712.687-010; Assembler, Plastic Hospital Products; 1991 WL 679245 (G.P.O.); *see also* D.O.T. 706.687-010; Assembler, Production, both cited by the ALJ as jobs Plaintiff could

-9-

perform. The failure to include this impairment in step two of the sequential analysis is reversible error.

Because the ALJ failed to properly consider all of Plaintiff's documented severe impairments at step two, the additional objections are moot.[6] The matter must be sent back to the Commissioner, for consideration of *all* of Plaintiff's impairments, and their combined effect, in step two and the subsequent steps, and the visual impairment must be included in any hypothetical posited to the VE at rehearing.

### *CONCLUSION*

The administrative decision is not supported by substantial evidence and was not made in accordance with proper legal standards. The decision is **REVERSED** and the matter **REMANDED** for additional consideration at step two and all subsequent steps, and additional proceedings, which may include a new hearing, if the ALJ determines that the combination of impairments does not meet or equal a listing. The Clerk is directed to enter judgment accordingly, and to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 28, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[6]The Court does note, however, that Plaintiff's arguments with respect to the misapplication of the pain standard here are well taken. The Court finds no support for the ALJ's conclusion that asking for Viagra means that a claimant is not in disabling pain (R. 28). "[P]articipation in everyday activities of short duration. . .does not disqualify a claimant from disability." *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir. 1997).